UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2007-33

JACK W. STANSEL                                              PLAINTIFF

VS.            MEMORANDUM OPINION and ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                              DEFENDANT

This matter is before the court on the plaintiff's motion for summary judgment (Doc. 11) and the motion for summary judgment of the defendant (Doc. 12).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel,17 Fed. Appx. 298, 300(6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines "disability" as the "inability to engage in any substantial

1

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Id. at 534(citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities." Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the

2

national economy.  Id. (Citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

The court notes that this case has an unusually long procedural history.  The claimant first filed for benefits on May 11, 1999.  The ALJ denied disability and the claimant appealed. on June 11, 2003 this court remanded the claimant's claim for benefits upon finding that the Commissioner's decision was not based on substantial evidence.  In that remand order, the court directed the Commissioner to further consider claimant's psychological issues.

On December 4, 2003, the ALJ held a hearing and subsequently issued a decision denying benefits.  The claimant appealed.  On August 1, 2005, this court again remanded the case to the Commissioner, at the Commissioner's request, so the Commissioner could obtain updated psychological evidence, which was not obtained upon remand.

On January 13, 2006, Dr. Eggerman performed a consulting examination of the claimant. On April 11, 2006, the ALJ held her third hearing on this matter.  On August 29, 2006, the ALJ again issued a decision finding the claimant was not disabled.  The claimant appeals the ALJ's decision.

At the time of the last hearing, the claimant was sixty-three years old and has an eleventh grade education.  His past employment has included work as a binder and shipper, shipping

3

and receiving clerk, and janitor. The claimant alleges he became disabled in February 1999 due to the effects of a heart attack, back pain and psychological impairments.

In 1997, the claimant had a heart attack and underwent angiography and stenting. In July 1998, the claimant had his right coronary artery stent replaced. Claimant's cardiologist continued to describe claimant as asymptomatic until September 11, 2000. At that time, the doctor observed diverse lateral wall ischemia, but his left ventricular wall motion and ejection fraction were both normal. Claimant continued to use nitroglycerin once or twice a week to relieve chest pain. Claimant also has a psychological impairment of depression with mood disorder and anxiety.

In August 2005, the plaintiff underwent surgery for circulation problems in his left leg. A May 2005 peripheral arterial screening revealed .78 ratio in the left ankle brachial index. Dr. Martin, the doctor performing the surgery, noted in the claimant's history, that the claimant had experience problems associated with poor circulation for years.

Claimant's date last insured is June 30, 2004. Thus, the court must determine whether the claimant's condition on or before June 30, 2004 renders him disabled.

At the third hearing, the ALJ sought the testimony of the claimant and a vocational expert. Upon hearing the testimony at the hearing and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

4

The ALJ determined at step one, that plaintiff had not been engaged in substantial gainful activity since the onset of disability.  At step 2, the ALJ determined that the plaintiff has severe impairments due to coronary artery disease, status post myocardial infarction, alcoholism, depression, personality disorder and anxiety.  At step 3, the ALJ determined that the claimant does not have an impairment or combination thereof that is listed in or equal to one listed  at 20 C.F.R. part 404, subpart P, appendix 1.  At step 4, the ALJ found based upon the vocational expert's testimony that plaintiff could perform his past relevant work as a janitor at the light level of exertion.  Although the ALJ's finding at step 4 permitted a finding of not disabled, the ALJ continued to step 5.

At step 5, the ALJ found that jobs existed in substantial number that claimant could perform.  Specifically, the ALJ adopted the findings of the vocational expert that given the RFC provided the claimant could perform light shipping clerk jobs (2,907 locally and 323,407 nationally), and light janitorial work (1,683 locally and 244,644 nationally).

The claimant first argues that the ALJ erred in finding that claimant's circulatory problems, for which he had surgery in 2005, were not present before the date last insured of June 30, 2004.  The claimant argues that his testimony that he has experienced sore legs for years, is supported by Dr. Martin's notation that "[t]he leg pain began gradually over time and has been occurring for years."  The claimant argues that in light of

5

this evidence the ALJ erred in not considering his vascular problems in determining his RFC.

Radiology results dated June 2005 evidenced calcified arterial walls in both of claimant's legs. The claimant saw Dr. Martin, a vascular surgeon, on July 26, 2005 complaining of leg pain when walking. He claimed that his pain is relieved by elevation or rest. Dr. Martin further noted that the claimant had no abnormal movement in any extremities, demonstrated normal muscle strength and tone, and had a normal gait. (AR 697-98). Dr. Martin scheduled the claimant for surgery on August 5, 2005. No further medical records are in the record evidencing the surgery or the results of the procedure.

The ALJ explained her finding that claimant's leg pain, which was caused by circulatory problems, did not relate back to the date last insured:

> In July 2005 the claimant was seen for complaints of worsening leg pain. Arterial evaluation the previous month had shown left superficial femoral artery disease and bilateral tibial artery disease. The claimant did undergo angioplasty of the left superficial femoral artery in August 2005 (Exhibit 20F). However, there were no objective findings that would relate back these symptoms and/or impairments prior to his date last insured. There is reference to leg pain going on for years but it is only recently that the claimant began treatment for them by Dr. Martin (Exhibit 20F) and as of July 2005 the pain was considered moderate (Exhibit 20F/6). There is nothing to show that these symptoms relate back or were of a disabling intensity before September 2004.

(AR 619).

The claimant has the burden of establishing that post-expiration evidence relates back to his condition prior to the expiration of his date last insured. See Wirth v. Commissioner

6

of Social Security, 87 Fed. Appx. 478 (6th Cir. 2003)(citing King v. Secretary of Health and Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990).

Here, the claimant has not presented any objective evidence to demonstrate that his circulatory problems were of a disabling nature prior to his date last insured. In fact, although the record demonstrates that the claimant had a history of peripheral vascular disease as early as September 1996, two consulting physicians reviewed the record in 1999 and concluded that the claimant could sit, stand or walk for up to six hours in an eight-hour workday. (AR 225, 265, 384, 416). Dr. Adolph also testified in the November 9, 2000 hearing that although the claimant had peripheral vascular disease in his legs and feet, his condition was not of such severity to affect his ability to stand eight hours a day. (AR 57-59). Dr. Adolph noted that the claimant could expect to experience some pain during long periods of walking. (Id.). In addition, the claimant did not begin seeking treatment from Dr. Martin until almost a year after his date last insured. Accordingly, the court finds that substantial evidence exists to support the ALJ's decision that the post-expiration evidence does not relate back to the claimant's condition prior to the expiration of his date last insured.

The claimant also argues that the ALJ erred in failing to give the opinion of his treating physician, Dr. Keller, controlling weight. The only opinion Dr. Keller has provided, however, relates to claimant's psychological condition.

7

On March 30, 2000, Dr. Keller completed a mental medical assessment of ability to do work-related activities finding the claimant had severe depression, poor interpersonal and coping skills and a mood disorder not adequately improved or controlled with medication.  Dr. Keller opined that the claimant had a fair ability to follow work rules, relate to co-workers, interact with a supervisor, function independently and carry out simple to complex job instructions.  He further opined that the claimant had no ability to use judgment, deal with work stresses or maintain attention or concentration.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1527(d)(2).  If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. *Bogle v. Sullivan*, 998 F.2d 342, 347-49 (6th Cir. 1993).

Here, the ALJ gave appropriate reasons to support her finding that Dr. Keller's opinion was not entitled to great weight.  The ALJ stated:

> In making this assessment, the undersigned is cognizant that Dr. Keller has indicated more severe limitations (Exhibit 14F).  However, Dr. Keller is a family doctor and not a specialist in psychiatric matters and his opinion is given little weight.  The doctor does not really explain why he limits the claimant as set forth in Exhibit 14F/2-4 other than by stating severe depression and poor interpersonal skills.  His letter (Exhibit 15F) mostly discusses the claimant's use of alcohol and indicates the claimant is disabled by depression in 2000 but he does not really explain why.  Other than some remote treatment in the early 1990's (Exhibit 13F - and this source also noted the

8

>claimant lied about his alcohol use) the claimant has not sought out any other treatment from a mental health professional even though Dr. Keller suggested counseling to the claimant back in May 2000 (Exhibit 15F). As previously noted, the undersigned has considered the claimant's alcohol use along with his other psychiatric impairments and his use of alcohol did not prevent him from working even when he was actively drinking. However his inconsistent statements regarding his use reflect negatively on his overall credibility. Dr. Eggerman found the area where the claimant would have the most difficulty is interaction with the general public. Dr. Keller's recent office notes shed little light on the severity of the claimant's depression. Those treatment notes essentially only give the diagnosis of depression on a sporadic basis and he only lists medications given for the depression (Exhibit 23F). In spite of recommendation for mental health treatment, the claimant has not followed through with this other than by taking medication from his family doctor which he said helps somewhat.

(AR 622).

The Court finds that the ALJ stated acceptable reasons for finding Dr. Keller's opinion less than fully credible: he is not specially trained in psychology; and he did not provided any objective clinical findings to support the serious mental limitations he assigns to the claimant. Therefore, the court finds the ALJ did not err in limiting the weight given to Dr. Keller's opinion.

The claimant also argues that the ALJ failed to follow this court's order of remand in which it directed the ALJ to evaluate the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule). This court was concerned because all three consultative psychological evaluators found limitations on the claimant's ability to complete a normal word day and week without

interruptions from psychological symptoms, but the ALJ did not articulate whether she considered this evidence. (Tr. 402, 435, 398).

The court agrees with the Commissioner that the ALJ did consider the claimant's ability to complete a normal work day and week when she examined the vocational expert. First, in response to the ALJ's questioning, the vocational expert opined that an employee could not miss more than three days per month to maintain employment. (AR 764). The vocational expert also opined that based upon Dr. Eggerman's 1999 narrative assessment, which included his opinion that the claimant had a fair ability to persist on task for a routine eight-hour day, that the claimant could perform his past relevant work as janitor or shipper at the light level of exertion.

The ALJ asked the vocational expert a hypothetical utilizing the restrictions posed by Dr. Keller's assessment in which he rated the claimant as having a poor ability to perform in the areas of judgment and reliability. The vocational expert testified that if the claimant had a poor ability to be reliable, use good judgment, relate to stress and maintain attention then he probably would not show up to work and eventually would lose his job. (AR 765).

The court finds that the ALJ's questioning of the vocational expert demonstrates that she performed the analysis ordered by the court and considered the claimant's ability to complete a normal word day and week without interruptions from psychological

10

symptoms.

The claimant also argues that the ALJ erred in relying on the vocational expert's statement that from a vocational standpoint moderate limitations have the same affect as mild or no limitations. The ALJ's decision, however, does not suggest that she found moderate limitations to mean the same as no limitations as she specifically found that the claimant should not work with the general public in a work setting. The ALJ read from Dr. Eggerman's narrative portion of his report when she used of the term "mildly to moderately limited" in a hypothetical to the vocational expert. There is no indication that she was using the terms interchangeably, but to demonstrate a range of impairment.

The claimant cites to the vocational expert's statement, in response to counsel's question, that from a vocational standpoint, "moderate" has the same meaning as "mild" or "none." This statement cannot be imputed to the ALJ. Counsel did not ask any follow up questions to indicate any improper assumptions on the part of the vocational expert. Instead, the record suggests that the vocational expert was pointing out that despite whether a claimant is mildly or moderately impaired, by definition, the claimant could still perform the requisite task satisfactory and therefore, would not be precluded from performing the activity.

The case relied on by the claimant, is distinguishable. In Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007), the claimant argued that the ALJ's RFC reflected that he accepted a

11

physician's finding of limitation on three areas, but inexplicably rejected the physician's finding of limitation as to four other restrictions. The government attempted to argue that because a finding of a "moderate" impairment is defined as one the individual can still perform satisfactory, it had the same effect as a finding of no impairment. The court disagreed and also found that the ALJ appeared to have rejected the government's argument because the ALJ placed limitations on the types of activities that the claimant could perform. Instead, the court remanded the case because it found the ALJ failed to explain why he rejected some of the restrictions identified on the physician's assessment while adopting other restrictions.

Here, the ALJ adopted all of Dr. Eggerman's findings and found that the claimant was limited psychiatrically from dealing with the general public in a work setting. She did not find as claimant indicates that "mild" and "moderate" have the same meaning. The court finds that the ALJ did not err by utilizing these terms to describe a range of impairment.

The claimant also argues that the ALJ erred in finding that his work as a janitor constituted substantial gainful activity. The parties agree that the earning record evidences that in 1997 the claimant worked as a janitor and had earnings of $3,276.75. The claimant testified that he worked four hours a day, six days a week earning approximately $6 per hour. (AR 578-79). The Claimant argues that since he worked as a janitor for less than six months, this work may be considered an unsuccessful work

12

attempt.

The regulations outline the factors required for a job to be considered an unsuccessful work attempt. 20 C.F.R. § 404.1574(c)(4) provides:

> *If you worked between 3 and 6 months.* We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work and -
> (i) You were frequently absent from work because of your impairment;
> (ii) Your work was unsatisfactory because of your impairment;
> (iii) You worked during a period of temporary remission of your impairment; or
> (iv) You worked under special conditions that were essential to your performance and these conditions were removed.

Here, the claimant did not offer any evidence demonstrating that any of the above factors applied to his work as a janitor. See Carreno v. Commissioner of Social Security, 99 Fed. Appx 594, 596 (6th Cir. 2004). Instead, the claimant testified he quit his job, he was not fired, because he did not get along with some of the people. (AR 580-81). The court finds that the claimant did not meet his burden of proving that the janitor position was an unsuccessful work attempt and finds that substantial evidence supports the ALJ's decision on this issue.

The court further finds that the fact the claimant worked as a janitor only part-time does not preclude a finding of substantial gainful activity. See 20 C.F.R. § 404.1572(a); Hammond v. Chater, No. 96-3755, 1997 WL 338719 (6th Cir. June 18, 1997).

13

The claimant further argues that the ALJ erred in finding that the janitor position constituted substantial gainful employment based upon earnings. The claimant argues that because, in 1999, the Social Security Administration raised the amount required to constitute gainful activity from $500 to $700 a month, his earnings of $500 a month in 1997 would not be substantial gainful activity. Claimant's argument lacks merit.

The court finds that the regulations specifically provide that work performed between January 1990 and June 1999 will ordinarily show a claimant has engaged in substantial gainful activity if a claimant earns at least $500 per month. 20 C.F.R. § 404.1574(b)(2). SSR 83-35 further explains that the ALJ must look to the specific earnings benchmark for the year that the work was actually performed. See Lamblin v. Commissioner of Social Security, No. 01-10007-BC, 2004 WL 1765476 (E.D. Mich. June 19, 2004).

Here, the ALJ properly looked at the minimum earnings for the year that the claimant actually performed the activity, 1997, and not the year that the Commissioner performed its evaluation. Accordingly, since the claimant made, at a minimum, $500 per month, this work constituted substantial gainful activity and the ALJ did not err in considering it relevant work.

Lastly, the claimant argues that the ALJ erred in finding he could perform a significant number of shipping jobs. The claimant asserts that his job as a bindery worker included only incidental duties of a shipper. Thus, he argues that shipping

14

cannot be found to be past relevant work and does not provide a basis for the ALJ to find that he has transferable skills to other shipping jobs.

Two vocational experts testified[1], after hearing the claimant's testimony, that the shipping skills the claimant learned in his job as a binder were transferrable to other shipping jobs at the light level. (AR 592, 762-67). The vocational experts found that there were more than 300,000 jobs in shipping and receiving that a claimant with an RFC as provided by the ALJ could perform at the light level. (AR 762-67, 594). Accordingly, the court finds that the testimony of the vocational expert provides substantial evidence to support the AlJ's decision that the clamant can perform shipping jobs at the light level. Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 548 (6th Cir. 2002).

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported

---

[1] Vocational expert Penny Carr testified at the March 2, 2004 hearing and vocational expert George Parsons testified at the April 11, 2006 hearing.

15

by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 11) be, and it hereby is, **denied** and the cross motion for summary judgment of the Commissioner (Doc. 12) be, and it hereby is, **granted**. That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 22nd day of October, 2007.



Signed By:
*William O. Bertelsman* WOB
United States District Judge